Sean J. Kirby
Daniel L. Brown (*Pro Hac Vice*)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
30 Rockefeller Plaza, 39th Floor
New York, New York 10112
Telephone: (212) 653-8700
Facsimile: (212) 653-8701
skirby@sheppardmullin.com
dlbrown@sheppardmullin.com

*Attorneys for Plaintiff Unified Teldata, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

--------------------------------------------------X

| | |
|---|---|
| UNIFIED TELDATA, INC. : | |
| : | |
| Plaintiff, : | Case No. 13-cv-00575 (MAS) (DEA) |
| : | |
| -against- : | *Document Filed Electronically* |
| : | |
| AVAYA, INC. : | Motion Day: May 6, 2013 |
| : | |
| Defendant : | |

-------------------------------------------- X


## PLAINTIFF UNIFIED TELDATA, INC.'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION .................................................................- 1 -

II.     STATEMENT OF FACTS .....................................................- 3 -

        A.    Avaya And Its Reseller Program.....................................- 3 -

        B.    The Formation Of UTDI And Its Relationship With Avaya ...........- 4 -

        C.    The Circumstances Of Avaya's Termination Of UTDI ..................- 6 -

        D.    Nature of Relief Sought................................................- 7 -

        E.    Key Terms Of The Avaya Contract .................................- 8 -

        F.    The Arbitration Provision.............................................- 9 -

        G.    The Prior Arbitration .................................................- 10 -

III.    ARGUMENT........................................................................- 11 -

        A.    The Key Legal Issues In This Case.................................- 11 -

        B.    The Arbitrator Lacks Authority To Decide The Key Legal
              Issues ........................................................................- 13 -

        C.    Because The Reseller Agreement Deprives The Arbitrator Of
              Authority To Decide Relevant Issues, The Arbitration Clause
              Cannot Be Enforced As Written.....................................- 15 -

              1.    The Arbitration Clause Is Procedurally Unconscionable ....- 17 -

              2.    The Arbitration Clause And Its Delegation Provision Are
                    Substantively Unconscionable ............................................- 19 -

        D.    The Court Has The Power To Sever The Unconscionable Terms
              Of The Arbitration Clause And Enforce The Remaining
              Provisions ........................................................................- 24 -

IV.     CONCLUSION.....................................................................- 25 -

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Alexander v. Anthony Int'l*
341 F.3d 256 (3rd Cir. 2003) ............................................. 2, 3, 12, 17, 19, 22, 23

*AT&T Mobility LLC v. Concepcion*
131 S.Ct. 1740 (2011)........................................................................15, 23

*Delta Funding Corp. v. Harris*
189 N.J. 28 (2006) ...............................................................................17, 20

*Estate of Ruszala ex rel. Mizerak v. Brookdale Living Communities, Inc.*
1 A.3d 806 (N.J. Super. Ct. App. 2010) .......................................23, 25

*Harris v. Green Tree Fin. Corp.*
183 F.3d 173 (3rd Cir. 1999) ............................................................16

*Indu Craft, Inc. v. Bank of Baroda*
47 F.3d 490 (2nd Cir. 1995) ............................................................21

*Jig the Third Corp. v. Puritan Mar. Ins Under.*
519, F.2d 171 (5th Cir. 1975) ............................................................18

*Lucey v. Fedex Ground Package Systems, Inc.*
2007 US Dist. LEXIS 77454 (D.N.J. 10-18-2007) *affirmed in part and reversed in part on other grounds by* 2009 US App. LEXIS (3rd Cir. 1-8-2009) ...............................................................................................23

*Major League Baseball Players Assn. v. Garvey*
532 U. S. 504 (per curiam) ............................................................13

*Martin v. Joseph Harris Co., Inc.*
767 F.2d 296 (6th Cir. 1985) ............................................................18

*Moore v. Woman to Woman Obstetrics & Gynecology, LLC*
416 N.J. Super. 30 (App. Div. 2010)................................................16

*Muhammad v. County*
   189 N.J. 1 (2006) .................................................................25

*Nagrampa v. Mailcoups, Inc.*
   469 F.3d 1257 (9th Cir. 2006) ...........................................18

*Nino v. Jewelry Exchange*
   609 F.3d 191 (3rd Cir. 2010) ............................................20

*Roadway Package System, Inc. v. Kayser*
   257 F.3d 287 (3rd Cir. 2000) ............................................14

*Rudbart v. North Jersey Dist. Water Supply Commission*
   127 N.J. 344 (1992) ..........................................................17

*Shell Oil Co. v. Marinello*
   63 N.J. 402 (1973) ..................................................1, 11, 18

*Spinetti v. Service Corp. Intern.*
   324 F.3d 212 (3rd Cir. 2003) ............................................25

*Swift Indus., Inc. v. Botany Indus., Inc.*
   466 F.2d 1125 (3rd Cir. 1972) .....................................13, 14

*Thomas v. Jenny Craig, Inc.*
   2010 U.S. Dist. LEXIS 82715 (D.N.J. Aug. 4, 2010) ........19

*Westfield Centre Serv. V. Cities Serv. Oil Co.*
   86 N.J. 453 (1981) ............................................................12

## **Statutes**

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* .............................15, 20, 26

N.J. Stat. Ann. § 12A:2-719 ..................................................11, 22

N.J. Stat. Ann. § 12A:2-302 ..................................................16, 20

N.J. Stat. Ann. § 56:10-5 ......................................................11, 20

## **Other Authorities**

Restatement (Second) of Contracts § 184(1) .........................................24

Plaintiff Unified TelData, Inc. ("Plaintiff" or "UTDI") respectfully submits this Memorandum of Law in Opposition to Avaya, Inc.'s ("Avaya") motion to compel arbitration.

## I. <u>INTRODUCTION</u>

Avaya is the U.S. and worldwide market leader in sales of telecommunications systems (phone, messaging, conferencing) to businesses and governments. UTDI was a longstanding, independent Avaya Platinum-level telecommunications systems reseller. UTDI had been built over 30 years by its founder Lyhn Haller; in its last full year of operations, it had gross sales in excess of $15 million. In this case, UTDI seeks to recover from Avaya for the destruction of UTDI's business through Avaya's unlawful and anti-competitive breach of contract by termination of UTDI's reseller status in 2011.

In defense of its termination of UTDI, Avaya relies upon its adhesive reseller agreement, that, among other things, purports to give Ayava the right to refuse to renew (or terminate) a longstanding invested reseller without cause and also precludes any award of lost profits. The enforceability of these provisions is a central issue in this case. Although these issues may not be finally decided on this motion, it is important to note New Jersey courts have held both types of clauses unenforceable. *See Shell Oil Co. v. Marinello*, 63 N.J. 402, 410 (1973) (provision allowing oil company to terminate its business relationship with gas station without

- 1 -

cause held unconscionable); *see also Alexander v. Anthony Int'l*, 341 F.3d 256, 265

(3rd Cir. 2003) (arbitration clause not enforced where contract precluded arbitrator

from awarding incidental or consequential damages).

Avaya correctly notes that the reseller agreement contains an arbitration

clause.  While UTDI welcomes arbitration in principle, arbitration would be

illusory and meaningless here because the reseller agreement purports to deprive

an arbitrator of the authority to determine the critical issues regarding the

Termination and Damages Provisions:

> "The arbitrator will not have the authority to limit, expand or
> otherwise modify the terms of this Agreement.
>
> ****
>
> "The arbitrator will have authority only to award compensatory
> damages within the scope of the limitations of Section 8 …"

(Reseller Agreement, § 10.3.)  If Avaya agreed to waive these provisions, UTDI

would stipulate to arbitration of this matter.  Alternatively, this Court can sever and

excise these unenforceable provisions and send the case to arbitration.  In the

absence of such a stipulation or relief, any arbitration would be a sham proceeding.

In cases like this where an adhesive arbitration clause deprives a party of a

remedy, state and Federal courts have also refused to compel arbitration.  *See e.g.,*

*Alexander, supra*, 341 F.3d at 265 (refusing to compel arbitration where contract

precluded arbitrator from awarding incidental or consequential damages).

- 2 -

For the reasons set forth herein, absent a stipulation from Avaya to waive the limitations upon an arbitrator's authority, the Court should either sever and strike out the offending provisions or, in its discretion, deny Avaya's motion to compel a meaningless arbitration.

## II.  STATEMENT OF FACTS

### A.    Avaya And Its Reseller Program

In approximately 2000, Avaya was formed as a telecommunications systems spinoff from Lucent Technologies.  (Declaration of Lyhn Haller ("Haller Decl."), ¶ 4.)[1]  By 2011, Avaya had revenue in excess of $5 billion from sales of its products (phones and equipment) and services (related maintenance).  (Declaration of Sean Kirby ("Kirby Decl."), Exs. 1-2.)

Avaya has used both direct and indirect channels to sell to its customers, businesses and government end users.  Most Avaya products and services are sold indirectly through resellers such as UTDI, who then resell such products to end users.  Avaya has approximately 9,900 authorized resellers.  Avaya benefits from its reseller program by externalizing sales costs and reaching a much broader base of customers.  But Avaya also sells its products and services directly to customers.

---

[1]     Unless otherwise indicated, all facts contained in the Statement of Facts are contained in the Haller Declaration filed concurrently herewith.

For this reason, as to certain large business opportunities, occasionally Avaya is in direct competition (and hence conflict) with its resellers.

There is no open market for Avaya products. Resellers like UTDI cannot purchase Avaya products from distribution channels unless they are "authorized resellers;" and, in turn, resellers cannot sell such products to anyone other than end users. (Haller Decl., Ex. A (Reseller Agreement, §1.1).) And, once a customer installs an Avaya telecommunications system (including phone systems, messaging, and conferencing), expansion, maintenance, and upgrade business opportunities depend upon "authorized reseller" status.

Avaya holds out the reseller opportunity as a "true partnership." Avaya requires its resellers to invest in the Avaya business, including by requiring training, certification testing, and acquisition and use of demonstration telecommunications systems. From 2000 to 2011, UTDI established an infrastructure and workforce dedicated to reselling Avaya products and services. In more than ten years as an Avaya partner, UTDI invested millions of dollars in its relationship with Avaya. And, at the time of UTDI's termination, UTDI employees held more than 100 distinct Avaya technology certifications.

**B.    The Formation Of UTDI And Its Relationship With Avaya**

In 1981, UTDI's owner Lyhn Haller started a telecommunications company, selling and servicing telecommunication solutions. From 1981 to 1998, she resold

- 4 -

phone systems and had a reseller agreement with voicemail provider Octel.  In 1998, she incorporated her company as Unified TelData Incorporated ("UTDI"). In 1997, Lucent acquired Octel and, by virtue of the acquisition, UTDI became a Lucent reseller.  In 2000, Lucent spun off its business telephone division, including the legacy Octel business, into a separate company named Avaya, Inc.  UTDI therefore became one of the first Avaya telecommunications resellers.

Over the years, UTDI has executed a number of Avaya reseller agreements. These agreement are pre-printed forms that are non-negotiable.  Avaya would make changes to these agreements without any input from or negotiation with its resellers.[2]  UTDI executed the most recent reseller agreement in April 2006. (Haller Decl., Ex. A.)  This most recent agreement was automatically renewed four times without any communication, until the termination in 2011.

In 2003, UTDI became a Platinum Dealer (the highest dealer level).  To achieve Platinum Dealer level status, Avaya requires a distributor to have a long list of certifications, achieve and maintain certain customer satisfaction levels, and

---

[2]     Avaya would tinker with these adhesive agreements as it wished.  For instance for the 2006 version, Avaya added some of the key provisions restricting the arbitrator's authority, including the restriction against "limiting" any provision of the agreement and the restriction against awarding damages beyond the limited damages authorized in section 8. *Compare* 2002 Reseller Agreement, § 19.1 with 2006 Reseller Agreement, §10.3 (attached to Haller Decl. as Exs. B and A, respectively).

earn minimum annual revenue in excess of $8 million.  UTDI repeatedly received

exceptional reviews from customers, and generated consistent growth and

revenues, with corresponding profits for Avaya each year.  In its last full year of

operation, UTDI had more than $15 million in revenue, more than 90% of which

was <u>dependent</u> upon the Avaya reseller business.

C.     **The Circumstances Of Avaya's Termination Of UTDI**

In 2010, the City and County of San Francisco ("CCSF"), a longstanding

UTDI client, issued a request for quote for a two-year Avaya telecommunications

maintenance contract, valued at approximately $2-4 million per year.  Avaya,

seeking the business for itself (direct channel), instructed UTDI not to respond to

submit a bid, although nothing in the Reseller Agreement purports to preclude such

competition.

UTDI, at CCSF's insistence, bid on the maintenance contract, as did Avaya.

No other reseller submitted a bid.  After UTDI submitted its bid, Avaya threatened

to cancel UTDI's reseller agreement if UTDI did not rescind its bid.  Fearing

repercussions from CCSF, UTDI could not rescind its bid.  CCSF awarded the

contract to UTDI, in part because it was for less money than the Avaya bid.

Avaya President Kevin Kennedy and Avaya responded by, among other

things:  (a) falsely representing to CCSF that UTDI was incompetent to carry out

the contract; and (b) telling CCSF that UTDI would not be able to complete the

project because Avaya would be terminating UTDI's reseller agreement, thereby making it impossible for UTDI to carry out the work under the contract. Despite Avaya's threats, CCSF executed the contract with UTDI.

On February 9, 2011, in retaliation and to stifle competition, Avaya notified UTDI that its Avaya reseller agreement would not be renewed, with termination effective a mere 60 days later on April 10, 2011. At the time of the termination, UTDI was on track to earn $20 million in revenue for 2011. As a result of the termination, many of UTDI's clients and customers sought out UTDI's competitors for Avaya products and services; and, many of UTDI's employees went to work for UTDI's competitors.

During the two months between notice and the effective date, UTDI made extraordinary efforts to salvage its business through an emergency sale. In May 2011, UTDI was sold for a small fraction of the pre-termination value of the business. As a result of the termination, UTDI's successful and growing business, which had been built on selling and servicing Avaya products, was destroyed.

**D.**   **Nature of Relief Sought**

By this action, UTDI asserts that Avaya's termination was unlawful and caused substantial damages, specifically the destruction (with modest mitigation) of the entire business. Juries have held other manufacturers contractually accountable for such unlawful terminations in similar circumstances. (Kirby Decl.,

- 7 -

Exs. 3-4 (Infra-Comm –Cisco Articles).)  UTDI seeks to recover from Avaya the value of its lost business, in essence the lost stream of anticipated profits from future operations.  (Complaint, ¶ 34.)  Avaya's anti-competitive and unlawful conduct destroyed UTDI, but, by design, harms everyone by permitting Avaya to extract higher prices from business and government for its maintenance services.

## E.     <u>Key Terms Of The Avaya Contract</u>

The reseller agreement includes what UTDI contends are unlawful provisions, including:

- **Termination Provisions (9.1 and 9.2)**.  Provisions that purport to give UTDI the right not to renew or to terminate an invested reseller <u>without cause</u>.

- **Damages Provisions.  (8)**.  Provisions that purport to limit the type of damages resellers can recover to the "purchase price and fees payable by the reseller for the products or services giving rise to the claim" (8.2) and precluding the award of lost profits or revenue (8.1).  These limitations lack mutuality, in that the limitations only apply to claims brought by resellers against Avaya.  Avaya "carves out" any instance in which Avaya would have a claim for damages against its resellers (section 8.3: infringement, reseller's breach of gray market restrictions, reseller's indemnity obligations, and resellers' payment obligations).  Avaya even tries, in advance of any

challenge, to save the suspect limitations clause through a waiver of the

"failure of essential purpose" objection to such clauses (8.4).

These clauses, coupled with the arbitration provision, were designed exclusively

by Avaya with no input from resellers to insulate Avaya.  Other courts have

refused to enforce similar clauses.  (Kirby Decl., Exs. 3-4 (Infra-Comm –Cisco

Articles).)

**F.**     <u>**The Arbitration Provision**</u>

The Reseller Agreement contains an arbitration provision which states:

"**10.3  Binding Arbitration**.  Subject to Sections 10.2 (Non-Binding Mediation) and 10.4 (Injunctive Relief), all Disputes must be finally resolved by binding arbitration before one arbitrator, selected pursuant to the Commercial Rules of the AAA.  The proceedings will be conducted in Morristown, New Jersey pursuant to such rules.  At either party's request, the arbitrator will give a written opinion stating the factual basis and legal reasoning for the decision.  The arbitrator appointed will the authority to determine issues of arbitrability and to consider and rule on dispositive motions.  <u>**The arbitrator will have authority only to award compensatory damages within the scope of the limitations of Section 8**</u> and will not award punitive or exemplary damages.  <u>**The arbitrator will not have the authority to limit, expand or otherwise modify the terms of this Agreement**</u>.  The parties, their representatives, other participants and the mediator and arbitrator will hold the existence, content and result of mediation and arbitration in confidence.  The provisions of this section may be enforced by any court of competent jurisdiction."

(Reseller Agreement, § 10.3 (emphasis added).)  UTDI concedes that this dispute

fits within the ambit of this agreement to arbitrate.  However, UTDI contends that

the emphasized provisions above make the arbitration clause illusory and unenforceable in the context of this dispute (analysis below).

If Avaya waives these limitations upon the arbitrator's authority, UTDI will stipulate to an order staying this case pending arbitration.  Absent such an agreement or an order from this Court severing these clauses, any arbitration of the claims in this case would be illusory.

**G.    The Prior Arbitration**

Avaya contends that because UTDI availed itself of arbitration procedures in 2010, it should be required to submit to arbitration here.  However, the prior dispute did not involve any challenge to the renewal/termination provisions of the contract, did not involve any claim by Avaya that the damages sought (commissions on a single contract) were in excess of damage limitations in the contract or beyond the authority of the arbitrator, and did not involve a challenge to any portion of the reseller agreement.  (Haller Decl., Exs. D – E (Claim/Award).) For these reasons, arbitration as set forth in the reseller agreement provided a suitable remedy in the prior dispute.  By contrast, in the instant dispute, arbitration as set forth in the reseller agreement would be meaningless.

## III.  ARGUMENT

**A.**     **The Key Legal Issues In This Case**

The key legal issues in this case will include the enforceability of the

termination and damages provisions, both of which are vulnerable under New

Jersey law.

For example, the New Jersey legislature and its courts have demonstrated

their disapproval of termination-without-cause provisions in similar agreements.

*See Shell Oil Co. v. Marinello*, 63 N.J. § 402, 410 (1973) (termination provision in

gas station distributorship agreement held unconscionable where there was unequal

bargaining power and dealer lacked ability to negotiate terms; court noting by

analogy that the New Jersey Franchise Practices Act evinced a public policy which

disfavored termination-without-cause provisions in franchise agreements); *see also*

N.J. Stat. Ann. § 56:10-5 (prohibiting termination or non-renewal of franchises

without "good cause" defined as "failure by the franchisee to substantially comply

with those requirements imposed upon him by the franchise").

Similarly, the New Jersey legislature and its courts have rejected adhesive

damage limitation clauses that would deprive a party of an effective remedy.  *See*

N.J. Stat. Ann. § 12A:2-719 (overriding limited remedy where it would "fail of its

essential purpose;" and "Consequential damages may be limited or excluded unless

the limitation or exclusion is unconscionable."); *Alexander v. Anthony Int'l*, 341

- 11 -

F.3d 256, 265 (3rd Cir. 2003) (declining to enforce agreement preventing plaintiff from recovering "complete compensation" for harm done, because it would allow the defendant to "evade full responsibility for its actions").

These same factors exist in this case.  UTDI had no bargaining power with Avaya; these agreements were handed down to resellers without opportunity for negotiation.  UTDI could not continue to serve its clients without Avaya authorized reseller status.

The actions taken by Avaya against UTDI epitomize the "long-standing abuses in the franchise relationship" (or perhaps worse) that the New Jersey legislature sought to combat when it banned termination-without-cause provisions in franchise agreements.  The legislative statement accompanying the NJFPA noted:

> "New Jersey would do the same in this bill which, through the courts, would rule out arbitrary and capricious cancellation of franchises. . . the bill would protect the substantial investment – tangible and intangible – of both parties in the various franchises. It would rule out economic coercion as a business tactic in this most sensitive field."

*Westfield Centre Serv. V. Cities Serv. Oil Co.*, 86 N.J. 453, 464 (1981).

Finally, by threatening (and carrying out) termination based solely on UTDI competing with Avaya for a contact with CCSF, Avaya sought to control UTDI's conduct beyond the terms of reseller agreement (which on its face permits competition) – just the type of "economic coercion" at the heart of the New Jersey

- 12 -

legislature's concern.  (Reseller Agreement, §§ 1.2, 1.3.)  Avaya's anti-competitive

conduct affects not only UTDI but ultimately end users like CCSF, who face

restricted competition and higher prices for necessary services as a result.

**B.**   **The Arbitrator Lacks Authority To Decide The Key Legal Issues**

The arbitration clause provides that "any dispute arising out of or relating to

this Agreement" is subject to binding arbitration.  (Reseller Agreement, §§ 10.1,

10.3.)  UTDI agrees that this is a dispute "arising out of" the reseller agreement.

The question on this motion is instead whether it is proper to compel arbitration in

this case (at least without modifying the arbitration clause), given the improper

limitations on the arbitrator's authority imposed by the reseller agreement.

It is axiomatic that an arbitrator's authority is strictly a function of the

agreement to arbitrate.  *Swift Indus., Inc. v. Botany Indus., Inc.*, 466 F.2d 1125,

1131 (3rd Cir. 1972) ("It is, of course, fundamental that the authority of the

arbitrator springs from the agreement to arbitrate."); *Major League Baseball*

*Players Assn. v. Garvey*, 532 U. S. 504, 509 (per curiam) (an arbitration decision

may be vacated on the ground that the arbitrator exceeded his powers "when [he]

strays from interpretation and application of the agreement and effectively

'dispense[s] his own brand of industrial justice.'").

As a result, courts have reversed arbitration awards where arbitrators

exceeded their authority.  *Roadway Package System, Inc. v. Kayser,* 257 F.3d 287,

300-301 (3rd Cir. 2000) (vacating award where arbitrator exceeded scope of his authority because the arbitration provision limited his authority to decide only whether termination was within terms of the Agreement, not examine the fairness of the termination); *Swift Indus., supra,* 466 F.2d at 1131 (setting aside arbitrator's award of a cash bond where arbitration agreement did not specify that a bond could be awarded).

Here, Avaya has placed two key restrictions upon the arbitrator of any dispute under the Reseller Agreement.

First, Avaya deprives the arbitrator of authority to "limit, expand, or otherwise modify the terms of the [reseller agreement]." (Reseller Agreement, § 10.3.) By this provision, Avaya precludes the arbitrator from considering the enforceability of the termination provisions.

Second, Avaya further protects its damages limitations by precluding the arbitrator from awarding any type of damages not allowed by the damage limitation provision. (*Id.* ("The arbitrator will have authority only to award compensatory damages within the scope of the limitations of Section 8.").) The language in section 10.3 might be redundant to the first limitation on authority to limit or modify the agreement, but the intent is clear: to preclude a reseller from holding Avaya to account for a wrongful decision to terminate.

If the Court compels arbitration without addressing these clauses, the arbitration would be an illusory, meaningless, sham proceeding. Either the arbitrator will respect the limitations in the reseller agreement and award nothing on UTDI's claim for the destruction of its business, or the arbitrator will be subject to reversal for exceeding his or her authority. In short, an arbitrator presently lacks the authority to make a meaningful decision in this case.

C.   **Because The Reseller Agreement Deprives The Arbitrator Of Authority To Decide Relevant Issues, The Arbitration Clause Cannot Be Enforced As Written**

UTDI acknowledges the strong Federal policy favoring arbitration. But, even the Federal Arbitration Act has its limits; specifically, the Act expressly preserves the unconscionability defense. Section 2 of the Act provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy … shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any such contract*." 9 U.S.C. § 2; s*ee also AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1746 (2011) (agreements to arbitrate "can be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability'").

New Jersey law expressly provides for unconscionability defenses to contract claims. N.J. Stat. Ann. § 12A:2-302 ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it

was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.").

This is not the first time that a party with the power to dictate the terms of an agreement has constructed an arbitration clause to insulate that party from damage claims. Courts that have considered such clauses have refused to enforce them as unconscionable.

Unconscionability requires a two-fold determination: (a) unfairness in the formation of the contract, in that there is no meaningful choice regarding acceptance of the provisions (procedural unconscionability); and (2) that the contractual terms are unreasonably or grossly favorable to one side and the disfavored party does not assent (substantive unconscionability). *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3rd Cir. 1999); *see also Moore v. Woman to Woman Obstetrics & Gynecology, LLC*, 416 N.J. Super. 30, 39 (App. Div. 2010) (defendants not entitled to summary judgment on the question of unconscionability where agreement contained one-sided waivers of rights). Courts have applied a sliding-scale approach to determine overall unconscionability, considering the relative levels of both procedural and substantive unconscionability. *Delta Funding Corp. v. Harris*, 189 N.J. 28, 39-40 (2006) (rejecting arbitration clause as unconscionable where it precluded award of statutory fees and costs).

Here, Avaya's arbitration clause is both procedurally and substantively unconscionable.

### 1.     The Arbitration Clause Is Procedurally Unconscionable

Procedural unconscionability may be satisfied if the agreement constitutes a contract of adhesion. *Alexander, supra*, 341 F.3d at 265. Under New Jersey law, "the essential nature of a contract of adhesion is that it is presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the adhering party to negotiate except perhaps on a few particulars." *Rudbart v. North Jersey Dist. Water Supply Commission*, 127 N.J. 344, 353 (1992).

Avaya's reseller agreement classically fits the description of a contract of adhesion, in that it was presented on a take-it-or-leave-it basis, is a standardized printed form, without any opportunity for UTDI to negotiate any of the terms. (Haller Decl., ¶ 6.)

Avaya is a $5 billion concern; UTDI, at its peak, was 300 times smaller. UTDI was at the economic mercy of Avaya due to: (a) the fact that the vast majority of UTDI's business was tied to the Avaya platform and was ongoing in nature (expansion, maintenance, upgrades); (b) the substantial long term investment by UTDI in the Avaya platform; and (c) Avaya's product distribution program that precludes resellers like UTDI from buying from distribution channels absent "authorized" status and precludes other resellers from selling other than to

- 17 -

end users (effectively closing the market to "non-authorized" resellers).  (Kirby

Decl., Ex. A.)  The discrepancy in size, coupled with resellers' dependency upon

Avaya "authorized" status, translates to a very material imbalance in bargaining

power between Avaya and UTDI.

 Courts have regularly found contracts to be procedurally unconscionable, in

the context of business transactions.  *See*, *e.g.*, *Shell Oil Co. v. Marinello*, 63 N.J.

402, 410 (1973) (termination without cause provision between major oil company

and local service station operator not enforced because it was void against public

policy); *Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1282-84 (9th Cir. 2006)

(holding arbitration provision between franchisor and franchisee unconscionable,

noting that franchise agreements have "some characteristics of contracts of

adhesion because of the 'vastly superior bargaining strength' of the franchisor");

*Martin v. Joseph Harris Co., Inc.*, 767 F.2d 296, 301 (6th Cir. 1985) (finding

exclusion of consequential damages unconscionable in a commercial context

between large national seed producer and independent, relatively small commercial

farmers); *Jig the Third Corp. v. Puritan Mar. Ins Under.*, 519, F.2d 171, 177

(5th Cir. 1975) (refusing to enforce contractual damage disclaimer despite

commercial context of case between ship manufacturer and owner/operator).

 The case cited by Avaya, *Thomas v. Jenny Craig, Inc.*, 2010 U.S. Dist.

LEXIS 82715, *22  (D.N.J. Aug. 4, 2010), is easily distinguished.  In *Thomas*,

there was no evidence of inability to negotiate, no evidence of a pre-printed form, and no evidence of a lack of effective alternative choice (i.e., other employment).

Given the extreme imbalance in size and bargaining power between Avaya and UTDI, the fact that UTDI was dependent upon receiving "authorized" status from Avaya, and the pre-printed and non-negotiable form, the Avaya reseller agreement presents a strong case for procedural unconscionability.

### 2.    The Arbitration Clause And Its Delegation Provision Are Substantively Unconscionable

Substantive unconscionability analysis considers whether terms unreasonably favor one party with absence of true consent by the other party. *Alexander*, *supra*, 341 F.3d at 267 (arbitration clause held substantively unconscionable where it precluded arbitrator from awarding incidental or consequential damages, required losing employee to bear costs (contrary to wrongful discharge statute), and amending certain disciplinary actions).

In the present case, two provisions of the arbitration clause are substantively unconscionable, the provisions that: (a) preclude the arbitrator from limiting or modifying the terms of the reseller agreement; and (b) preclude the arbitrator from awarding damages beyond the (unreasonable) limits of the Reseller Agreement.

The clause precluding the arbitrator from limiting or modifying other provisions of the reseller agreement is designed, among other things, to insulate

- 19 -

termination and damages provisions from unconscionability review.  Of course, this provision tends to favor Avaya, the drafter of the contract (and presumably the party not wishing to otherwise defend its contract).  This provision also would preclude modification of the damage limitations (discussion below).

The effort to insulate the contract from unconscionability review is contrary to public policy evinced by New Jersey and even Federal law.  N.J. Stat. Ann. § 12A:2-302 (New Jersey Franchise Practices Act prohibition on termination or non-renewal of franchises without "good cause"); N.J. Stat. Ann. § 56:10-5 (unconscionability defense codified); 9 U.S.C. § 2 (Federal Arbitration Act, preserving state law defenses to contracts).

In *Delta Funding Corp.*, *supra*, 189 N.J. at 39-40, the New Jersey Supreme Court held that an arbitration clause that precluded the award of statutory fees and costs was contrary to public policy.  Arguably, an arbitration clause precluding the award of statutory fees and costs is *less* concerning than the provisions of the reseller agreement, which abrogate substantive defenses to contract provisions. *See also Nino v. Jewelry Exchange*, 609 F.3d 191, 202-203 (3rd Cir. 2010) (arbitration provision found substantively unconscionable where time to file grievance was too short, where company received additional rights to reject arbitrator, and where fee awards were restricted).

The clause precluding the arbitrator from awarding damages is also substantively unconscionable. The intent of this clause is to preclude any review of the damage limitations, clauses that themselves are extremely one sided:

- Section 8.1 precludes an award of lost profits award, the only type of damage award responsive to the destruction of UTDI's business. *See Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 496 (2nd Cir. 1995) (court affirmed lost profits award of $3.25 million to borrower of bank; finding breach resulted in destruction of the business; holding that the value of a business as an ongoing entity from the company's past earnings provides the "best method of calculating damages."). This lost profits limitation has little or no application to Avaya.

- Section 8.2 precludes any award above the "purchase price and fees payable by reseller for the product or services giving rise to the claim." This provision has no applicability in the case of the destruction of the entire business. However, the reseller agreement does not provide any exceptions.

- Section 8.3 then specifically carves out from these limitations almost any imaginable claim that Avaya could bring against a reseller, such as actions for violation of Avaya's intellectual property rights, any reseller indemnity obligation, any gray market activity (i.e., lost profits from such

activity), or any payments due to Avaya.  This lack of mutuality starkly demonstrates the imbalance in terms.

- Finally, section 8.4 purports to waive the "failure of essential purpose" defense codified in the New Jersey (and Uniform) Commercial Code at N.J. Stat. Ann. § 12A:2-719(b)(2) ("Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.").

This combination of clauses dramatically favors Avaya and effectively precludes, in the present case, any meaningful recovery.  On its face, the provision in the arbitration clause that purports to require the arbitrator to follow these limits is in turn substantively unconscionable.

In *Alexander, supra*, 341 F.3d at 267, the Third Circuit invalidated damage limitations as substantively unconscionable where they "substantially limit[ed] the relief available to Plaintiffs using a 'narrow' definition of 'net pecuniary damages.'" The Third Circuit held that these damages restrictions were "one-sided in the extreme and unreasonably favorable to [defendant];" and, that such a limitation would allow defendant to "evade full responsibility for its actions." *Id.*

Other courts in New Jersey have found substantive unconscionability where the arbitrator was precluded from awarding reasonable damages. *See Lucey v. Fedex Ground Package Systems, Inc.*, 2007 US Dist. LEXIS 77454 (D.N.J. 10-18-

- 22 -

2007) *affirmed in part and reversed in part on other grounds by* 2009 US App. LEXIS (3rd Cir. 1-8-2009) (clause that precluded arbitrator from awarding punitive damages, consequential damages, or attorneys' fees held substantively unconscionable); *see also Estate of Ruszala ex rel. Mizerak v. Brookdale Living Communities, Inc.*, 1 A.3d 806 (N.J. Super. Ct. App. 2010) (arbitration provision limiting compensation for non-economic damages and arbitrarily capping compensatory damages held substantively unconscionable).

Recent Supreme Court authority is not adverse.  In *AT&T Mobility v. Concepcion*, 131 S.Ct. 1740, 1753 (2011), the Supreme Court compared the remedies available to aggrieved parties under a cell phone contract in arbitration and in court.  The Supreme Court upheld the arbitration clause before it, noting that plaintiffs in arbitration would be "guaranteed" to be made whole and would arguably have "better" recovery rights in arbitration.  *Id.*  Unlike the provisions of Avaya's reseller agreement, there were no noxious damage limitations at issue in *AT&T Mobility*.

In the reseller agreement, Avaya has attempted to use the arbitration clause to insulate itself entirely against claims of the sort brought by UTDI.  If successful, Avaya will have evaded the stated public policies of New Jersey (and most every other state) in terms of unconscionability, damage limitations, and termination without cause of longstanding business relationships.

- 23 -

The results of such a ruling can be seen as promoting the underlying conduct by Avaya in this case: It provides a party with superior bargaining power the right to unlawfully constrain competition.  Such a result ultimately harms not only UTDI but all consumers (including the government, the customer in this case).

Because UTDI has demonstrated both substantive and procedural unconscionability, the arbitration clause of the reseller agreement cannot be enforced as written.

**D.   The Court Has The Power To Sever The Unconscionable Terms Of The Arbitration Clause And Enforce The Remaining Provisions**

This Court has authority to sever the unconscionable terms so that arbitration can be meaningful.  The Restatement (Second) of Contract explains that, where aspects of an agreement are unenforceable, "a court may nevertheless enforce the rest of the agreement in favor of a party who did engage in serious misconduct if the performance as to which the agreement is unenforceable is not an essential part of the agreed exchange."  Restatement (Second) of Contracts § 184(1).

New Jersey courts have severed unconscionable terms from a contract and enforced the remaining provisions.  *See Spinetti v. Service Corp. Intern.*, 324 F.3d 212, 219 (3rd Cir. 2003) (severing portions of arbitration agreement regarding the payment of costs and attorneys' fees); *Ruszala*, *supra*, 415 N.J.Super. at 300 (severing the adhesive provisions and remanding case for adjudication before

arbitrator); *Muhammad v. County*, 189 N.J. 1 (2006) (severing unconscionable provision and enforcing otherwise valid arbitration agreement).  Avaya apparently anticipated that certain provisions of its reseller agreement would be unenforceable, and expressly provided for the severability of any clauses found to be unenforceable.  (Reseller Agreement, § 11.2).

In the event the Court wishes to compel arbitration, it can do so after severing the unconscionable terms that otherwise purport to restrict the arbitrator's authority to determine the validity of the suspect provisions and to restrict the arbitrator's ability to award certain damages.

## IV.  CONCLUSION

For the foregoing reasons, UTDI respectfully requests that the Court deny Avaya's motion to compel arbitration.  Or, alternatively, UTDI respectfully requests that the Court sever the unconscionable provisions of the reseller agreement, then stay this case pending arbitration.[3]

---

[3]     The FAA § 3 requires courts to stay, rather than dismiss, actions pending arbitration.  9 U.S.C. § 3.

Dated:  April 22, 2013

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: ___*s/ Sean J. Kirby*_____
Sean J. Kirby
30 Rockefeller Plaza
New York, New York  10112
Tel.:  (212) 653-8700
Fax:  (212) 653-8701

*Attorneys for Plaintiff Unified Teldata, Inc.*

- 26 -